# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEANDRE BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ANDREW M. SAUL, | § | SA-18-CA-00639-XR |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this date, the Court considered the Report and Recommendation of the United States Magistrate Judge (docket no. 25), and Plaintiff's objections thereto (docket no. 29). The Magistrate Judge recommends affirming the Commissioner's decision denying benefits. After careful consideration, the Court will accept the recommendation and affirm.

## Introduction

Plaintiff seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff contends that the ALJ erred by failing to properly consider his physical limitations and pain, as well as his criminal background, in determining whether Plaintiff is still able to work.

## Administrative Proceedings

Based on the record in this case, Plaintiff fully exhausted his administrative remedies prior to filing this action in federal court. Plaintiff filed for DIB and SSI on December 4, 2014, alleging disability beginning March 2, 2011. The Commissioner denied the application initially and on reconsideration. Plaintiff then asked for a hearing. A hearing was held before ALJ Janice Holmes on December 12, 2016. Plaintiff appeared, represented by his attorney, and vocational expert Billy

Brown also appeared and testified. The ALJ issued a decision on April 28, 2017, concluding that Plaintiff is not disabled within the meaning of the Social Security Act.[1]

The Appeals Council concluded that no basis existed for review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action seeking review of the Commissioner's decision on June 26, 2018.

## Analysis

**A. Standard of Review and Burdens of Proof**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner). Conflicts in the evidence and credibility assessments are for the Commissioner

---

[1] To be entitled to DIB, Plaintiff must prove that he became disabled before June 30, 2015, the date his insured status expired. However, for SSI, Plaintiff may establish disability through April 28, 2017, the date of the ALJ's decision.

and not for the courts to resolve. *Martinez*, 64 F.3d at 174. Courts weigh four elements in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process. 20 C.F.R. § 404.1520, 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.

The first step involves determining whether the claimant is currently engaged in substantial gainful activity. If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience. The second step involves determining whether the claimant's impairment is severe. If it is not severe, the claimant is deemed not disabled. In the third step, the Commissioner compares the severe impairment(s) with those on a list of specific impairments. If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience. If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity ("RFC") and the demands of his past work. If the claimant is still able to do his past work, the claimant is not disabled.

If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work. If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis. *Leggett*, 67 F.3d

3

at 564. Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work. *See Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989).

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached her decision at step five of the evaluation process. At step one, the ALJ determined that Plaintiff did engage in substantial gainful activity after the alleged onset of disability on March 2, 2011, but because there were periods of no substantial gainful activity, the ALJ continued the analysis. Tr. 52. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; history of right wrist fracture with fusion, infection, and removal of hardware; history of left wrist fracture with fusion, infection, and hardware removal; and osteoarthritis. Tr. 53. The ALJ found Plaintiff's Hepatitis C and history of drug/alcohol abuse were non-severe because the Hepatitis C had "no associated symptoms" and his substance abuse "is in reported remission." Tr. 53.

At step three, the ALJ found that Plaintiff did not meet any listing impairments. The ALJ specifically considered and rejected Listing 1.02 and 1.04. Tr. 53. The ALJ found that Plaintiff had the RFC to perform the full range of light work, with the following additional limitations: "occasional stooping and frequent handling/fingering bilaterally." Tr. 53. Based on this RFC, the ALJ found at step four that Plaintiff was unable to perform his past relevant work as an AC

assembler or land surveyor helper, which were medium work beyond his residual functional capacity. Tr. 57.

At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including light laundry folder, lobby attendant, and parking lot attendant/cashier. Tr. 58. These were jobs that the VE identified that Plaintiff could do. Tr. 94. Accordingly, the ALJ found Plaintiff was not disabled at step five.

## C. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ erred by (1) failing to adequately account for Plaintiff's pain and limited use of both wrists/hands in determining his RFC and ability to work and (2) failing to take into account his criminal background insofar as it might prevent him from obtaining the jobs the VE and ALJ identified. The Magistrate Judge rejected each of these alleged errors and recommends affirming the Commissioner's decision.

### 1. Plaintiff's pain and limited use of both wrists

In his brief, Plaintiff emphasizes that he has "very limited use of both wrists and [his] lower back," that his fingers and wrists lock up to a point where he cannot tie his shoes or open a can of soda, and steroid shots did not help. He asserts that he could not do the jobs identified by the VE because they require physical labor and the use of both his back and wrists.

This Court's review of the Commissioner's decision is very limited. The Court may determine only whether substantial evidence supports the decision and whether the decision comports with proper legal standards. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Here, Plaintiff essentially contends that the ALJ did not properly evaluate the intensity and persistence of his symptoms related to his wrists and his pain, and thus reached an incorrect conclusion about what work-related activities Plaintiff can still perform.

A symptom is an individual's own description or statement of his or her physical impairment. SSR 16-3p. Under the regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical impairment or disability. *Id.* However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. *Id.* First, the ALJ considers whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the symptoms, such as pain. And second, if so, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

The ALJ properly followed this analytical standard, finding that Plaintiff had severe impairments including "degenerative disc disease of the cervical and lumbar spine; history of right wrist fracture with fusion, infection, and removal of hardware; history of left wrist fracture with fusion, infection, and hardware removal; and osteoarthritis" and that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. But she concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence and other evidence of record. The ALJ reviewed all of the evidence and found that Plaintiff is not prevented from performing all types of work activity, but could do the full range of light work, with additional restrictions on stooping (occasional) and handling/fingering bilaterally (frequent). The ALJ noted that Plaintiff's treating doctors and chiropractor had not indicated long-term restrictions, but only temporary restrictions following an injury or surgical procedure.[2]

---

2 The ALJ stated that she considered "the alleged symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence (20 CFR 404.1529 and 416.929 and SSR

The Court next determines whether the ALJ's conclusion is supported by substantial evidence. Again, this review is strictly limited. "Substantial evidence" is a term of art. "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). As a result, this Court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks and citation omitted).

The ALJ discussed medical records showing that: Plaintiff fell on October 11, 2013, and tried to break his fall with his left hand; x-rays revealed post-traumatic deformity with displacement and joint osteoarthritis; notes from November 2013 indicated Plaintiff was unable to flex and extend his left wrist; notes from that same visit showed a well-healed scar on his right hand with "minimal flexion/extension of wrist, moderate grip strength, and 4th/5th trigger finger." Tr. 54. The assessment was left wrist dislocation and arthritis, history of right wrist fusion, and right hand 4th/5th trigger finger. He received steroid injections in the right 4th/5th fingers. *Id.* The ALJ noted that Plaintiff underwent left wrist arthroscopy on December 19, 2013. Tr. 54.

---

96-4p)" as well as "opinion evidence (20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p)." Tr. 53. The ALJ reviewed Plaintiff's testimony from the hearing about his injuries to his wrists, problems with his lower back giving out, and his use of alcohol to self-medicate for his pain. Tr. 53-54. The ALJ also reviewed Plaintiff's criminal history and substance abuse history. Tr. 54.

The ALJ noted that a musculoskeletal exam on August 4, 2014 showed "normal range of motion and muscle strength in upper and lower extremities." On February 16, 2015, Plaintiff went to the emergency room complaining of left wrist pain following a fall onto his outstretched hand on approximately February 14. Tr. 55. His splint was removed and his "wrist was slightly swollen and he lacked extension or flexion"; sensation was intact; repeat imaging revealed possible left wrist fracture and ligament tear; he was placed into a fiberglass short-arm cast; he was on nonsteroidal anti-inflammatory drugs for pain control and was non-weight bearing to the left upper extremity at the time. Tr. 55.

The ALJ discussed an internal medicine consultative exam on March 9, 2015 at which Plaintiff complained of wrist problems, arthritis, and back problems. Tr. 54. The doctor noted lumbar spine tenderness; that Plaintiff was able to squat and rise 40% of normal and was able to bend to touch the floor; straight leg raising test showed tenderness bilaterally at 20 degrees of elevation; he was able to walk on heels and toes without pain or difficulty; forward flexion of the lumbar region was limited to 50 degrees, extension to 10 degrees, and lateral motion to 10 degrees; and x-rays revealed no significant abnormality. Tr. 55. As for his wrists, "[h]is right wrist was fused with no dorsal/ventral flexion"; grip was diminished, but present on the right; and there was a short arm cast extending from the fingers to the mid forearm with immobilization of the left wrist; grip strength was 8 pounds to the right and 0 pounds to the left due to the cast." *Id.* The impression was "chronic lumbar pain secondary to disc disease, chronic right wrist pain secondary to fractures and multiple surgeries with fusion, chronic left wrist pain secondary to trauma, arthritis in bilateral lower extremities." *Id.*

The ALJ discussed orthopedic clinic notes dated May 28, 2015 indicating that Plaintiff underwent left wrist fusion on May 7, 2015; he reported his pain had been well controlled and he

8

had been improving; he had his wrist in a splint and had been compliant with non-weight bearing status; he appeared to be healing well on physical examination and x-ray; he was placed in a short-arm cast. Tr. 55. The ALJ noted that physical examination on June 16, 2015 "showed excellent digital range of motion with intact sensation" and "x-rays of left wrist revealed satisfactory plate fixation." Tr. 55. She noted that x-rays on July 7, 2015 showed satisfactory plate fixation without change in alignment.

The ALJ noted that Plaintiff was in an automobile collision on February 7, 2016, after which he sought chiropractic care for neck and back pain. Tr. 56. Cervical x-rays on March 4, 2016 showed minimal osteoarthritic spur at C5 and x-rays of the lumbar spine revealed no fracture or spondylosis. An MRI of the lumbar spine on March 16, 2016 showed disc bulge at L4-5 and disc protrusion at L5-S1 with minimal thecal sac impingement, and MRI of the cervical spine showed disc bulges at C2-6 with muscle spasm and no evidence of stenosis. Plaintiff underwent cervical and lumbar epidural injections in April and May 2016, respectively. Tr. 56.

The ALJ noted that Plaintiff sought treatment for chronic neck and low back pain on October 12, 2016 and for low back pain on November 3, 2016. Tr. 56. She noted that Plaintiff had good range of motion with no motor deficits and straight leg raising was positive for hamstring tightness on the left at about 70 degrees. Tr. 56. She noted that he had no edema and normal gait. Tr. 56. She noted that an MRI of the lumbar spine on November 15, 2016 showed multilevel degenerative changes with mild neuroforaminal narrowing. Progress notes from December 2016 included an impression of minimal degenerative changes at L4-5 and state that surgical intervention was not recommended; Plaintiff was told to exercise good lifting techniques, keep his

weight down, and keep his muscles strong. Tr. 56-57.[3]

The ALJ noted that a bone scan of Plaintiff's hands in December 2016 showed an increased blood uptake in a metacarpal bone in Plaintiff's left hand, concerning for osteomyelitis. Tr. 57. Plaintiff received outpatient surgery on February 2, 2017 to remove the hardware in his left wrist. On February 28, he was progressing well, but continued to have some mild pain and some joint stiffness throughout the fingers, and physical therapy was prescribed. Tr. 57. The examiner indicated that the limited function of the left hand would likely keep Plaintiff from returning to work for several weeks. Tr. 57.

After discussing all of these records, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Plaintiff's testimony that both wrists are fused. Tr. 53-54. She also noted that his wrists are fused in finding that he had severe impairments, including history of right wrist fracture with fusion and history of left wrist fracture with fusion. Tr. 53. But, the ALJ wrote, "The medical evidence of record does not demonstrate that the claimant is prevented from performing all types of work activity. Any work restrictions/limitations noted by the claimant's physician and chiropractor have been temporary in nature following an injury or surgical procedure." Tr. 57. The ALJ also gave "great weight" to the assessments of the state agency medical consultants finding that Plaintiff could perform a wide range of light work "because their opinions are generally supported by the objective medical evidence, including the imaging studies and physical

---

3 At the hearing, Plaintiff testified that he had bone scans scheduled for December 2016 because of possible infection and bone deterioration. Tr. 79. The ALJ noted this and considered medical records from December 2016 and February 2017, after the December 12, 2016 hearing date.

examination." Tr. 57.4

The Magistrate Judge concluded that the ALJ properly evaluated the evidence and that the ALJ's RFC and ability-to-work determinations are supported by substantial evidence. Plaintiff contends that both of his wrists are locked in place and he cannot move them, and this has caused his hands and fingers to swell, and that they are totally disfigured and they hurt. He states he cannot tie his shoe or pick a dime up off the floor. He states that no x-rays have ever shown normal joints in his hands, and the only reason he had full motion after his surgery in 2013 was because of a block that was applied under his armpit. Despite the ALJ's reference to August 2014 records showing normal range of motion and strength in his upper extremities, Plaintiff states that he never had any type of good motion in August 2014 and never regained any range of motion after that surgery.

He states that, as of today, he has 0 motion with disfigured hands, numbness, and pain. He states that even if 2015 records showed healing in his wrists, they healed and totally fused, so he cannot use them, and his noted "diminishing grip" has totally diminished. He further states that the medical records showing that he had excellent range of motion in June 2015 makes no sense if he had a wrist fusion with satisfactory plate fixation. He also states that his back is in pain. More specifically, Plaintiff asserts that he has never said the steroid injections worked, and he told the doctor they were a waste of time, and that is why he went back to the hospital. He further states that he has complained numerous times to the doctors about how much pain he is in, and has cried over

---

4 In April 2015, Dr. Samaratunga found Plaintiff's statements regarding his symptoms to be partially credible, and found he had the RFC to lift/carry up to 20 pounds occasionally and 10 pounds frequently, and found limited fingering and fine manipulation as to the right hand only. Tr. 118. Plaintiff provided additional records relating to his left wrist injury and fusion in 2015. In June 2015, Dr. Rehman found Plaintiff's statements regarding his symptoms not fully supported and partially credible, and found he could lift up to 20 pounds occasionally and up to 10 pounds frequently, and found he was limited in handling in his left hand, and limited to occasional left hand handling. Tr. 129. The assessment was projected to one year from his wrist procedure. Tr. 130. The examiner found Plaintiff could do light work, and identified three occupations he could do (surveillance system monitor, election clerk, barker). Tr. 131.

11

and over. Plaintiff states he has tried going to the hospital but they do not help him because he has no insurance and cannot make payments.

The Court has considered Plaintiff's briefing and his objections to the Magistrate Judge's report. However, this Court's review is limited to determining whether substantial evidence supports the ALJ's decision, even if this Court would reach a different conclusion if it were deciding the issue in the first instance. The ALJ considered all of the medical evidence and her decision is supported by substantial evidence. Although Plaintiff states that he only had full range of motion after his 2013 surgery due to a nerve block, the cited exam showing full range of motion was on July 15, 2013, after the surgery in May 2013 to remove the hardware and after any nerve block was removed. Further, other records from November 2013 state, "Patient states that he is able to use his right hand to do daily activity like use the restroom." Tr. 368.

The ALJ cited to August 2014 records showing that Plaintiff had normal range of motion and strength in his upper extremities, but Plaintiff disputes that he had normal range of motion at that time. The Court notes that this was a visit to an acute care clinic for "nausea and throat swelling"; it was not a focused evaluation of Plaintiff's extremities or wrists. Tr. 426. It is not clear whether the ALJ relied on this evidence or simply included it in the overall discussion of Plaintiff's medical records. However, the ALJ considered Plaintiff's medical evidence specific to his wrists after 2014, thus any mention or consideration of this record is not harmful error.

Plaintiff injured his left wrist in a fall in February 2015 and underwent left wrist fusion surgery in May 2015. Tr. 447, Tr. 458. He reported on follow-up in late May 2015 that his pain was well-controlled and he had been improving since his discharge. Tr. 714. He stated that he had been moving his fingers as much as he could tolerate, but had some pain especially with full extension and full flexion. Tr. 714. On follow-up in June 2015, the doctor noted "excellent digital range of

12

motion." Tr. 723. Plaintiff contends he could not have excellent range of motion if he also had wrist fusion with satisfactory plate fixation. But the records do not indicate excellent range of motion in his wrists, just his fingers (digits).

Plaintiff fell again in July 2015 and reported "mild swelling and discomfort in his left wrist" on July 7, 2015. Tr. 728. The doctor noted mild swelling, but "very trace," and "full range of motion of the digits." Tr. 728. Plaintiff also reported pain in his left wrist and finger numbness following a car accident in February 2016. Tr. 510, Tr. 520. However, on March 11, 2016, it was noted that his left "wrist is better" and left wrist pain was no longer listed as a complaint. Tr. 524, Tr. 526. Plaintiff did have a note of "concern for osteomyelitis" in his left hand on the bone scan in December 2016, and he had surgery to remove the hardware in February 2017. But the ALJ noted that the doctor only indicated that Plaintiff would be out of work for several weeks after the surgery, and there is nothing in the medical records indicating ongoing limitations precluding light work, as the ALJ found.

With regard to Plaintiff's right wrist, May 2015 notes from the doctor about Plaintiff's desire to have the left wrist fusion surgery state that Plaintiff "is very pleased with his right wrist fusion and its functioning." Tr. 461, Tr. 658 ("He was interested in undergoing the operative management for treatment with a fusion of his left wrist in a similar fashion to his right wrist."), Tr. 625 (noting that Plaintiff was "happy" with his right wrist fusion). Thus, although medical records demonstrate that Plaintiff's right wrist was fused with no flexion in March 2015, e.g. Tr. 441-42, there is also evidence that Plaintiff was happy with its functioning and did not report pain in 2016. Later medical records do not indicate that Plaintiff continued to have problems with his right wrist beyond its fusion.

With regard to Plaintiff's back pain, the ALJ noted that the most recent records from

13

November and December 2016 showed only mild degenerative changes; Plaintiff had full range of motion, no edema, and normal gait; no surgical intervention was recommended; and that the chiropractor had indicated that Plaintiff would be out from work for only a short term period due to his back. Tr. 539-541.

The Court finds that substantial evidence supports the ALJ's decision. The ALJ considered the fact that Plaintiff's wrists are fused, but found that the medical records and opinions from consultative examiners supported a finding that Plaintiff could still engage in light work. Plaintiff has not shown that having his wrists fused would preclude him from doing the jobs identified by the ALJ. Similarly, the ALJ was entitled to consider the objective medical evidence to conclude that Plaintiff's back pain would not limit him from doing light work. This Court is not free to reweigh the evidence or reach a different conclusion from the ALJ.

### 2. Consideration of Plaintiff's criminal history

Plaintiff asserts that potential employers will check his criminal background, and this will prevent him from getting the types of jobs that the VE and ALJ identified at step five. The Magistrate Judge noted that the ALJ did discuss Plaintiff's criminal history in her opinion. However, the failure to take into account at step five whether a criminal background might preclude employment is not error. As the Magistrate Judge noted, criminal history is not a factor that the ALJ is required to consider in determining what other work the Plaintiff can perform. Rather, the ALJ considers only whether, given the Plaintiff's RFC, other work exists in the local or national economy that Plaintiff could perform. The Social Security Act expressly provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, *or whether he would be hired if he applied for work*.

42 U.S.C. § 423(d)(2) (DIB), 42 U.S.C. § 1382c(a )(3)(B) (SSI) (emphasis added). Accordingly, the fact that Plaintiff may not be hired for the identified jobs because of his criminal background does not alter the analysis at step five, and the Court cannot reverse on this basis.

## Conclusion

The recommendation of the Magistrate Judge is ACCEPTED and the decision of the Commissioner to deny benefits is AFFIRMED.

The Clerk is directed to CLOSE this case.

SIGNED this 31st day of January, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE